[No. C050503. Third Dist. Feb. 14, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS PHILLIPS, Defendant and Appellant.

**COUNSEL**

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RAYE, J.**—Defendant Nicholas Phillips was found guilty by a jury of robbing a Togo's sandwich shop. (Pen. Code, § 211.)[1] Defendant waived jury trial on enhancements that were based on a prior serious felony conviction (§ 667, subds. (a), (b)–(i)), and the trial court found the enhancements true. The trial court denied probation and sentenced defendant to a state prison term of 11 years.

Defendant appeals, contending the trial court erred by denying his *Batson-Wheeler*[2] motion. The principal question before us is whether it was proper for the trial court to require explanations for only two of the three prospective jurors who were the subject of defendant's motion. We conclude that it was and shall affirm the judgment.

## BACKGROUND

Defendant, who is African-American, brought a *Batson-Wheeler* motion during voir dire after the prosecuting attorney exercised three of four peremptory challenges to excuse African-American prospective jurors. With respect to one of the prospective jurors, the trial court noted:

"In terms of Juror Number Eight, I do not find that, even with the new standard and inference of discrimination, Juror Number Eight indicated, as I understand it, that she had numerous family members that were involved with crime and matters such as this, and despite her representation, it's my opinion that the District Attorney does not have to believe that and can feel that she may well not be fair to the People's side.

---

[1] All further statutory references are to the Penal Code.

[2] *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*).

"So in terms of that one, I do not require any explanation. In terms of the other two, explain."[3]

The prosecuting attorney explained she had excused one of the jurors because he was a teacher at a religious school and it had been her experience that such jurors had difficulty finding people guilty. The trial court found this explanation reasonable and that it "dispel[led] the inference of group bias" with regard to this juror. Later, the prosecuting attorney realized she had accidentally relied on information in the questionnaire of another juror with the same last name when excusing this juror, and she informed the court of her mistake. Defendant's attorney withdrew his challenge to this juror.

With regard to the other juror, the prosecuting attorney stated that she had "passed" on challenges three times when this prospective juror began "rolling his eyes," and based on his body language, she felt he did not want to serve on the jury. The trial court found that this peremptory challenge was not exercised based on group bias.

## DISCUSSION

## I

Defendant contends the trial court erred by not requiring the prosecutor to provide an explanation for each of the three prospective jurors who were the subject of his *Batson-Wheeler* motion. We disagree.

■ Initially, we reject the People's argument that because defendant did not object when the trial court stated it would not require an explanation as to one of the jurors, he has forfeited his claim for appellate purposes. An objection under *Batson-Wheeler* is in effect a motion to require explanations from the prosecution for each suspect challenge. Defendant was not required to interpose another objection when the trial court partly relieved the prosecutor of this obligation.

■ Turning to the merits, the rules governing the consideration of *Batson-Wheeler* motions are well established. The exercise of peremptory challenges to exclude members of an identifiable group of citizens on racial grounds violates the equal protection clause of the federal Constitution (*Batson, supra*, 476 U.S. at p. 89) and violates a defendant's right to trial by a

---

[3] The juror in question said she had family members who had been involved in different types of crimes and had gone to jail or prison, but she did not attend any of the court proceedings and had not heard any complaints about their sentences. She stated she also had a family member who was a correctional officer.

jury drawn from a representative cross-section of the community under the California Constitution (*Wheeler, supra*, 22 Cal.3d at p. 280).

█ Peremptory challenges are presumed to have been exercised for a constitutionally permitted purpose. (*People v. Williams* (2000) 78 Cal.App.4th 1118, 1125 [93 Cal.Rptr.2d 356].) To overcome the rebuttable presumption of validity, a defendant who objects to the prosecution's use of peremptory challenges must initially make a prima facie case demonstrating " 'that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' " (*Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129, 125 S.Ct. 2410] (*Johnson*).)

Proof of a prima facie case is the first of three steps that guide a trial court's constitutional review of peremptory challenges. "Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' " (*Johnson, supra*, 545 U.S. at p. 168.)

The parties acknowledge these general principles. They disagree on the scope of the trial court's duty during the second step to require the prosecution to disclose reasons for its peremptory challenges. In his opening brief, defendant insists that "[b]ecause the *Wheeler* motion challenges the selection of the jury, and not one particular juror, the court has a duty to inquire about all dismissed jurors subject to the motion." Because Juror No. 8 was named in the motion, defendant argues the trial court erred in failing to inquire about her dismissal.

█ In support of this proposition, defendant cites *People v. McGee* (2002) 104 Cal.App.4th 559, 570 [128 Cal.Rptr.2d 309] (*McGee*). However, subsequent to the close of briefing, the Supreme Court decided *People v. Avila* (2006) 38 Cal.4th 491 [43 Cal.Rptr.3d 1, 133 P.3d 1076] (*Avila*), which appears to reject this aspect of *McGee* and hold that in considering a *Wheeler* motion, the focus of the court's inquiry is on the individual juror (or jurors) identified in the motion. "[T]he issue is not whether there is a pattern of systematic exclusion; rather, the issue is whether a particular prospective juror has been challenged because of group bias." (*Avila*, at p. 549.)

We asked the parties to provide supplemental briefing regarding the effect of *Avila* on the question of whether the trial court was required to obtain an explanation from the prosecutor for each juror identified in the *Wheeler* motion. Defendant maintains that *McGee*'s finding of a duty to inquire about

all dismissed jurors named in a *Wheeler* motion survives *Avila* and that the portions of *McGee* repudiated by *Avila* are distinguishable from the present case.

■ In *Avila*, a *Wheeler* motion was made early in the jury selection process. The court concluded the defendant had failed to establish a prima facie case as to the challenge of a prospective African-American juror. Later, after the prosecutor exercised a peremptory challenge against a second African-American juror, another motion was made. The court found a prima facie case but required the prosecutor to explain only his exclusion of the second African-American prospective juror and not the first. (*Avila, supra,* 38 Cal.4th at pp. 541–542.) Rejecting the defendant's claim of error, the Supreme Court held that when a trial court determines the defendant has made a prima facie showing that a particular prospective juror has been challenged because of such bias, it need not ask the prosecutor to justify his challenges to other prospective jurors of the same group for which the *Batson-Wheeler* motion has been denied. (*Id.* at pp. 549–550.)

■ *Avila* involved sequential *Batson-Wheeler* motions with divergent prima facie findings. A negative finding as to one prospective juror was followed by a positive prima facie finding of bias as to a second prospective juror. In this circumstance, where the court at an early point in voir dire has declined to find a prima facie case of discrimination, the Supreme Court found that "if a trial court finds a prima facie showing of group bias at a later point in voir dire, the court need only ask the prosecutor to explain 'each suspect excusal.' (*People v. Arias* (1996) 13 Cal.4th 92, 135 [51 Cal.Rptr.2d 770, 913 P.2d 980].) Each suspect excusal includes the excusals to which the defendant is objecting and which the court has not yet reviewed." (*Avila, supra,* 38 Cal.4th at p. 551.) Having already determined there was no prima facie case of discrimination as to the first juror, the trial court was not obliged to revisit its earlier finding and the prosecutor was not obliged to disclose reasons for the challenge of that juror.

Distinguishing *Avila*, defendant points out, "Here, defense counsel made one motion pertaining to all three jurors. Thus, the trial court was to find a prima facie case for the motion as to all three jurors, or none at all. It was not a matter of renewing a motion for a finding of a prima facie case for a juror who was the subject of a previously denied motion. All three jurors were the subject of the motion. The first juror qualified as a 'suspect excusal,' i.e., '[an] excusal[] to which the defendant is objecting and which the court has not yet reviewed.' (*People v. Avila, supra,* 38 Cal.4th at p. 551.)" Defendant has described a factual difference between *Avila* and the present case. We are not persuaded that the difference matters.

The linchpin of *Avila* is the principle that a prosecutor is not required to explain the reasons for a challenge until the defendant has established a prima facie case of discrimination and thereby overcome the rebuttable presumption that a challenge has been validly exercised. Defendant is correct that *McGee* and *Avila* involved sequential *Wheeler* motions accompanied by separate findings of a prima facie case. In our case, there is but a single motion. However, the driving force in the *Avila* decision was not the number of motions but the presence or absence of a prima facie case of discrimination against the juror or jurors who were the subject of the motion.

Defendant argues that a "suspect excusal" is every excusal referenced in the *Wheeler* motion. However, that is not what *Avila* holds. A suspect excusal is "[an] excusal[] to which the defendant is objecting *and which the court has not yet reviewed.*" (*Avila, supra*, 38 Cal.4th at p. 551, italics added.) Here, the trial court expressly determined that Juror No. 8's exclusion did not evidence discrimination. Thus, her exclusion did not form a part of " 'the totality of the relevant facts giv[ing] rise to an inference of discriminatory purpose.' " (*Johnson, supra*, 545 U.S. at p. 168.)

Defendant maintains that when a single *Wheeler* motion is made as to a group of jurors, "the court may not parse out which jurors it feels require explanation and which do not." This proposition is correct where the court has found a prima facie case as to all of the jurors identified in a *Wheeler* motion. However, that is not our case.

If defendant is suggesting that a court may not make separate findings as to individual jurors, then he is mistaken. Had Juror No. 8's excusal been the subject of a separate *Wheeler* motion that failed for lack of a prima facie case, *Avila* makes it clear there would be no obligation to inquire of the prosecutor about the reasons for her discharge in a later motion based on the discharge of the other two jurors.[4] This scenario would more closely resemble the cases cited by defendant. There is no reason to reach a different result where the court's finding as to a single juror, in this case Juror No. 8, is made during the consideration of a single motion addressing the discharge of all three prospective jurors. Again, "the issue is not whether there is a pattern of systematic exclusion; rather, the issue is whether a particular prospective juror has been challenged because of group bias." (*Avila, supra*, 38 Cal.4th at p. 549.)

Defendant's argument might also have more traction had the court in the present case simply found, without further elaboration, that defendant had

---

[4] There would be no obligation to inquire about the reasons for the discharge unless the later challenge casts the prosecutor's earlier challenges in a new light, causing the court to find a prima facie case of group bias as to the earlier juror(s). (*Avila, supra*, 38 Cal.4th at p. 552.)

established a prima facie case. In such a circumstance, a court must proceed to the second step of the *Wheeler* analysis and inquire into the basis for the challenges. During this second step, the court's inquiry is confined to the *prosecutor's* motive for exercising a peremptory challenge. The court is not permitted to substitute its conjecture or surmise for the actual reasons declared by the prosecutor. "[I]t does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the *real* reason they were stricken." (*Paulino v. Castro* (9th Cir. 2004) 371 F.3d 1083, 1090, cited with approval in *Johnson, supra,* 545 U.S. at p. 172.)

Here, however, the court elaborated and explained why Juror No. 8's disqualification did not factor into the court's finding of a prima facie case. The court's comments were not offered in substitution of the prosecution's explanation for exercise of its peremptory challenge; no explanation was required from the prosecution because the court had not then found a prima facie case. In light of the court's finding, Juror No. 8's excusal was not a "suspect excusal" in the vernacular of *Wheeler* jurisprudence.

We note that defendant does not assert, nor could he, that a court is foreclosed from considering a prospective juror's voir dire responses in determining whether a defendant has made a prima facie case. Rather, the court must consider the totality of the circumstances, which include not only the pattern of the prosecution's challenges but the jurors' demeanor and statements in court. Based on Juror No. 8's responses, the court could properly conclude that defendant had not rebutted the presumption that the prosecution's challenge was validly exercised.

■ In summary, a *Wheeler* motion questions whether a particular prospective juror has been challenged because of group bias. Before the prosecution can be compelled to disclose its reasons for challenging a particular juror, the defendant must present facts from which an inference of discrimination against that juror can be drawn. A trial court may properly determine as to a particular prospective juror that the facts do not permit an inference of discrimination, even as it makes a contrary determination with respect to other prospective jurors. Having determined the facts did not support an inference of discrimination against Juror No. 8, the court did not err in failing to seek the prosecutor's reasons for challenging the juror.

## II

Defendant also claims the trial court "failed to elicit sufficient reasons" for the peremptory challenges of the other two jurors. He is mistaken.

Defendant argues the trial court should have "inquire[d] further" when the prosecuting attorney disclosed she had mistakenly dismissed one of the prospective jurors because she relied on information in the questionnaire of another juror with the same last name. Defendant does not claim that the explanation initially offered by the prosecutor for excusing this juror (that her experience with jurors of the same occupation had been that they had difficulty finding a defendant guilty) was insufficient. And, as acknowledged by defendant, "a genuine 'mistake' is a race-neutral reason" for exercising a peremptory challenge. (*People v. Williams* (1997) 16 Cal.4th 153, 189 [66 Cal.Rptr.2d 123, 940 P.2d 710] (*Williams*).)

Nor do we agree with defendant that the trial court was required to make any further inquiry as to the genuineness of the prosecutor's mistake under the circumstances. (See *Williams*, *supra*, 16 Cal.4th at p. 190.) The prosecutor fully explained the source of her mistake, and because it involved jury questionnaires and prospective jurors with the same surnames, the error was subject to objective verification. Moreover, the fact that the prosecutor brought the mistake to the court's attention even though the court had already ruled in her favor lends further support to the conclusion that the mistake was genuine.

We rely on the trial court's judgment to distinguish bona fide reasons from sham excuses. (*People v. Reynoso* (2003) 31 Cal.4th 903, 918 [3 Cal.Rptr.3d 769, 74 P.3d 852].) There is no basis to depart from that course here.

Finally, defendant claims the prosecutor's reason for excusing one of the prospective jurors based on his body language was too "vague" to rebut the prima facie showing of group bias. Peremptory challenges based on alienating " 'bare looks and gestures' " are race neutral and not improper. (*Wheeler*, *supra*, 22 Cal.3d at p. 276; see *People v. Turner* (1994) 8 Cal.4th 137, 171 [32 Cal.Rptr.2d 762, 878 P.2d 521], overturned on another ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5 [15 Cal.Rptr.3d 743, 93 P.3d 344].) Defendant cites no authority to the contrary. Moreover, the fact that the prosecutor had passed several times on making peremptory challenges before excusing the prospective juror tended to support her explanation that it was conduct by the juror, not his race, that precipitated the challenge. Accordingly, we reject this claim.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 9, 2007, S150799.